UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TROY STRATOS,<br><br>    Defendant. | No.  2:11-CR-00537-TLN<br><br>**ORDER** |

The United States ("Government") has filed a motion in limine before this Court seeking admission of certain evidence under Federal Rule of Evidence 404(b) ("Rule 404(b)") in advance of the May 4, 2015 trial date.  (ECF No. 101.)  Counsel for Defendant Troy Stratos ("Stratos") submitted an opposition to the Government's motion.  (ECF Nos. 104, 111–114.)  The Government submitted a reply.  (ECF No. 108.)  The Court held a hearing on this matter on March 5, 2015.[1]

**I.   BACKGROUND**

On May 4, 2015, the parties are scheduled to appear before this Court to conduct a jury trial as to Counts 12–15 and 18–19 of a 20 count superseding indictment ("Superseding

---

[1] The Court heard oral argument on the Government's Motion in Limine for Admission of Evidence Pursuant to FRE 404(b) (ECF No. 109), and the Motion was submitted.  Attorneys Todd Pickles and Jared Dolan were present on behalf of the Government.  Defense counsel Heather Williams, Timothy Zindel and Noa Oren were present, along with Defendant Troy Stratos, who appeared in custody.

1

Indictment") filed on May 23, 2013.[2]  (ECF No. 58.)

Counts 12–15 are separate allegations of wire fraud as to alleged victim Timothy Burns. Counts 18–19 are allegations that Stratos engaged in money laundering with funds received from Burns.  The Superseding Indictment alleges that Stratos engaged in a scheme to defraud Burns by using materially false and fraudulent pretenses, including the use of a false name, Ken Dennis, and by representing that he acted on behalf of a Carlos Slim, a billionaire living in Mexico.  (ECF No. 58 at 9–10.)  Stratos allegedly represented to Burns that he could purchase shares of stock from the company Facebook ("Facebook") as a result of a deal Stratos had arranged between Carlos Slim and Facebook.  (ECF No. 58 at 10.)  The Superseding Indictment alleges that once Stratos received the money from Burns, Stratos indicated that the completion of the deal was delayed as a result of the complexity and size of the stock purchase.  (ECF No. 58 at 11.) Monetary transactions were conducted through Soumaya Securities LLC, a company allegedly controlled by Stratos.  (ECF No. 58 at 11.)  The Superseding Indictment alleges that Stratos used a number of misrepresentations to convince Burns that the deal was legitimate and would be completed.  (ECF No. 58 at 12–14.)  The Superseding Indictment also alleges that Stratos spent the money he received from Burns on payment to individuals who either had claims and civil judgments against Stratos or who maintained information on the internet indicating that Stratos committed fraud.  (ECF No. 58 at 12.)

II.   **STANDARD OF LAW**

Rule 404(b)(2) permits the introduction of evidence of crimes, wrongs, or other actions for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  The Ninth Circuit has set forth a four-factor test to determine if character evidence is admissible under 404(b).  *United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014).  The Government must show that the evidence "(1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in

---

[2] The remaining counts were severed from the instant action by order of the Court to be tried separately.  (ECF No. 78).

time." *Id.* Finally, while Rule 404(b) functions as an exception to a general prohibition on character evidence, it is not an exception to Federal Rule of Evidence 403 ("Rule 403"), which allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See United States v. McElmurry*, 776 F.3d 1061, 1067 (9th Cir. 2015). Therefore, the Court must determine not only if the evidence offered meets the four-factor test, but must ensure that its value is not outweighed under Rule 403.

## III.   RULING

With respect to Counts 12–15, the United States has charged Stratos with wire fraud by means of three text messages to Burns (dated January 13, 2012, January 18, 2012, and January 19, 2012) and one telephone call (dated February 12, 2012). (ECF No. 58 at 15.) The elements to be proven for wire fraud are as follows:

> (1) The defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (4) the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

*Ninth Circuit Model Criminal Jury Instructions, 8.124 Wire Fraud.*

With respect to Counts 18–19, the Government has charged Stratos with laundering the funds received from Burns. Count 18 alleges that Stratos laundered $13,820.64 on September 9, 2011 by making a wire transfer to Matthew Antrobus. Count 19 alleges that Stratos laundered $154,321.42 on October 5, 2011 by writing a check payable to Sheri Farley. The elements to be proven for money laundering are as follows:

> (1) The defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4) the property was, in fact, derived from the unlawful activity alleged in the indictment; and (5) the transaction occurred in the United States.

*Ninth Circuit Model Criminal Jury Instructions, 8.150 Money Laundering.*

The Government seeks the admission of evidence and testimony related to twelve witnesses. The Court will address each witness individually below.[3]

1. *Matthew Antrobus*

The Government argues for admission of the testimony of Matthew Antrobus. Antrobus will testify that he worked for Stratos as his personal assistant, that Stratos implied he was a billionaire, and that Stratos told him that he made money investing in AOL stock and oil investments through his connection to a wealthy Middle Eastern friend. Antrobus will also testify that he put a series of charges on his personal card at Stratos' request because Stratos told Antrobus that he would reimburse him. Antrobus will state Stratos owed him roughly $13,200 from those 2007 expenses and that Stratos paid him $13,820.64 in 2011. The Government argues that payment came from money received from the alleged Facebook fraud scheme.

Count 18 in the Superseding Indictment alleges that Stratos committed money laundering by making a wire transfer of $13,820.64 to Matthew Antrobus on September 9, 2011. For that reason, Antrobus' testimony that he received this wire transfer from Stratos is inextricably intertwined with the Government's case against Stratos and will be admitted. However, the Court finds that any testimony regarding *why* Stratos paid the $13,820.64, beyond a simple statement that he was paid monies owed, is unrelated to Count 18 and therefore is not admissible.

With respect to the admission of this testimony under 404(b), the Court finds the fact that Antrobus put expenses on his personal credit is not sufficiently similar to the events in this case. Also, there is no indication that Stratos induced Antrobus to give his money to Stratos for investment purposes, as allegedly occurred with Burns. Further, there is insufficient evidence to indicate that Stratos made any effort to fraudulently induce Atrobus to part with his money based on Stratos' representations. Therefore, Antrobus' testimony will be limited to how he came to know Stratos and his statement that he received the money from Stratos. The Court will be prepared to instruct the jury to refrain from any speculation as to why the money was paid.

---

[3] In its analysis, the Court will not recount the oral argument made by parties or other information entered into the record at the March 5, 2015, hearing except to the extent needed to provide support for the Court's reasoning.

2. *Sheri Farley*

The Government argues for the admission of the testimony of Sheri Farley. She started working for Stratos in 2006 and was promised total compensation of $250,000. However, she stopped receiving a salary sometime in 2007. Sheri Farley will testify that Stratos represented that he had partners in the Middle East who made him wealthy, that he was friends with the royal family in Dubai, and that the royal family helped him invest in AOL stock and oil. Sheri Farley maintained a website recounting her interactions with Stratos. She will also testify that Stratos paid her $154,000 to remove the website. The Government argues that those payments can be traced to money received from the alleged Facebook fraud scheme.

Count 19 of the Superseding Indictment alleges that Stratos committed money laundering by writing a check to Sheri Farley for $154,321.42 on October 5, 2011. Because the Government's case relies on the allegation that Stratos paid money received from the Facebook scheme to Sheri Farley, her testimony on that issue is inextricably intertwined with the Government's case against Stratos and will be admitted. However, her testimony as to *why* she received the funds will be limited by the Court, as discussed below.

The Government seeks to offer testimony from Sheri Farley that she maintained a public website with Sam Farley that included allegations from Sheri Farley and different individuals that Stratos offended or defrauded these individuals in some way. The Court finds that this evidence may be admissible under Rule 404(b) as evidence of Stratos' motive to allegedly provide the false identity of Ken Dennis to Burns. However, at this point, the Government has failed to offer sufficient facts or evidence to demonstrate to this Court that Stratos' motive in paying Sheri Farley was to hide previous frauds from Burns or that the website provided motivation for Stratos' use of a fake name. The Court will address this specific issue when motions in limine are heard on May 4, 2015. At that time, the parties will be permitted to submit additional argument on this issue. If the Court finds that testimony regarding Sheri Farley's website is admissible, the Court has the discretion to limit such testimony to avoid undue prejudice under Rule 403.

However, the Government is instructed to avoid eliciting testimony from Sheri Farley that would seek to demonstrate that Stratos committed a fraud against Sheri Farley by not paying her

5

1  salary since this is not similar to the alleged fraud at issue in this case.  While Sheri Farley's
2  testimony regarding the website may be admissible under Rule 404(b) for the purpose of
3  establishing his motive to use a false identity with the named victim in this case, the Court finds
4  that failure to pay Sheri Farley is not sufficiently similar to the instant action to establish a
5  common plan or scheme under Rule 404(b).

      3.  *Dennis Rush*

7       The Government argues for admission of the testimony of Dennis Rush.  Rush claims that
8  he paid Stratos almost $2 million to partner with Stratos and re-record and distribute songs by
9  Nancy Wilson, Stratos' stepmother.  Rush will testify that Stratos represented that he owned the
10 rights to Ms. Wilson's music, but he did not in fact have the rights.  Rush brought civil suit
11 against Stratos, which settled for around $1.5 million.  Rush posted the information about the
12 default judgment on a website.  Stratos paid the settlement.  The Government alleges that this
13 settlement money can be traced to money received from the alleged Facebook fraud scheme.

14      The Government seeks to admit this evidence under Rule 404(b), but the Government has
15 failed to produce sufficient evidence to establish that Stratos did not have the rights.  If Stratos
16 did not have the production rights to Nancy Wilson's songs, and lied about that fact to Dennis
17 Rush, then the Court might reconsider allowing the evidence under Rule 404(b).  The Court does
18 note that in taking legal action against Stratos, Rush also named Nancy Wilson in his suit, which
19 might very well indicate to the Court that Stratos did not deceive Rush regarding his connection
20 with Nancy Wilson and her involvement in the project.  Additionally, the result of a default
21 judgment provides insufficient evidence that fraud actually occurred in this instance.  Issues like
22 these will result in a "mini-trial" on Rush's testimony.  The Court finds that this testimony poses
23 a risk of unfairly prejudicing Stratos, confusing the issues, and misleading the jury.  Thus,
24 evidence of a default judgment will not be admitted since it is prejudicial under Rule 403.

25      Finally, with respect to the $1.5 million payment that the Government maintains can be
26 traced to the money received from the alleged Facebook fraud scheme, the Court finds that such
27 testimony is inextricably intertwined with the Government's case against Stratos and will be
28 admitted.  However, the Court finds that any testimony regarding *why* Stratos paid the $1.5

6

1 million will be reserved until the Government produces sufficient evidence to prove that Stratos
2 lied to Dennis Rush about his ownership of the production rights to Nancy Wilson's songs. Rush
3 will be permitted to testify that he received the funds as payment for money owed, but may not
4 testify as to the settlement.

    4. *Viive Truu*

6 The Government argues for admission of the testimony of Viive Truu, who claims that
7 Stratos represented to her that he was friends with members of the Saudi royal family and, based
8 on those connections, earned a position in a trust account in Switzerland. Truu further maintains
9 that Stratos told her that his money was held up overseas and he needed to borrow money.
10 Between 2001 and 2003, Truu loaned Stratos around $10 million. In 2011, Stratos paid Truu
11 $225,000 in money that the Government contends can be traced to the alleged Facebook fraud
12 scheme. Stratos allegedly told Truu that he would pay her $1 million more on the week of his
13 arrest.

14 The Court reserves ruling on this issue pending further argument from parties at the
15 scheduled motions in limine hearing on May 4, 2015. At this time, the Court does not find
16 sufficient facts or evidence to support the Government's assertion that Stratos fraudulently
17 induced Truu to give him money. Without an indication that Truu relied on Stratos'
18 representations, the Court cannot find sufficient similarity with this testimony and the underlying
19 charge under Rule 404(b).

    5. *Adam Roberts*

21 The Government argues for admission of the testimony of Adam Roberts. Roberts will
22 offer testimony that Stratos offered him a job, that Stratos told Roberts that he was worth $800
23 million, and that Stratos had invested in AOL stock and oil investments, in part because of his ties
24 to the Saudi royal family. Roberts will testify that Stratos failed to pay Roberts his stated salary
25 and to make payments on his car as promised. In October 2011, Stratos did pay Roberts $40,000
26 in money that the Government contends can be traced to the alleged Facebook fraud scheme.
27 The Court finds that Roberts' testimony that he received this money from Stratos is
28 admissible and relevant to the charges of money laundering at issue in this case. However, the

Court finds that any testimony regarding *why* Stratos paid the $40,000, beyond a simple statement that he was paid monies owed, is unrelated to Counts 18–19 and therefore is not admissible.

With respect to the admission of this evidence under 404(b), the Court finds that the alleged fraud is not sufficiently similar to the events in this case. There is no indication that Stratos induced Roberts to give any money to Stratos for investment purposes, as allegedly occurred with Burns. Further, there is insufficient evidence to indicate that Stratos made any effort to fraudulently induce Roberts to part with his money based on his representations. Therefore, the Court finds that this testimony is inadmissible under Rule 404(b).

6. *Nicole Murphy*

The Government argues for admission of the testimony of Nicole Murphy. Murphy will offer testimony that Stratos represented to her that he was very wealthy and had overseas connections. Murphy will testify that Stratos offered to manage and invest her divorce proceeds, and that, based on his representations, she shared a bank account with Stratos containing millions of dollars. Furthermore, Murphy will testify that she was unable to contact Stratos after September 2007 and hired a private investigator to find him. She eventually filed a lawsuit against Stratos. Murphy will offer testimony that, following the Facebook fraud scheme, Stratos offered to pay Murphy $500,000 as a settlement, which she refused.

The Government seeks to admit this evidence under Rule 404(b). The Court agrees that Stratos' interactions with Murphy are similar to the alleged events in this case. Stratos represented that he had wealthy overseas connections that would permit him to make money for Murphy through investments. These representations allegedly induced Murphy to provide Stratos with access to her bank accounts. The testimony of this witness may be admitted to establish identity under 404(b). Further, the Court finds that risk of unfair prejudice to Stratos is substantially outweighed by the probative value of Murphy's testimony.

Finally, the Court finds that testimony about any settlement offer by Stratos is precluded under Rule 408. The Court also finds that Stratos' offer to pay Murphy is not relevant to Counts 18–19. Therefore, this testimony will not be admitted.

### 7. *Bill Branscum*

The Government argues for admission of the testimony of Bill Branscum, the private investigator hired by Murphy to find Stratos. Branscum will testify that he collected and posted audio files of numerous interviews with individuals reporting various interactions with Stratos. Branscum will further testify that Stratos retained him and paid him $40,000, which the Government argues can be traced to the alleged Facebook fraud scheme. Branscum will also testify that he helped Stratos to find other individuals that Stratos owed money, including Dennis Rush.

The Court finds that Branscum's testimony that he received money from Stratos is admissible and relevant to the charges of money laundering at issue in this case. However, the Court finds that any testimony regarding *why* Stratos paid the $40,000, beyond a simple statement that he was paid monies owed, is unrelated to Counts 18–19 and therefore is not admissible.

Further, the Court finds that all other testimony offered by Branscum is not related to the counts at issue in this trial. The fact that Stratos owes money to other individuals is, on its own, not enough to substantiate any related allegation of fraud and is not related to Counts 18–19. The Government has failed to show how Branscum's testimony is admissible under Rule 404(b). In addition, the Court finds that the danger of unfair prejudice outweighs the probative value of the evidence with respect to Branscum's testimony under Rule 403.

### 8. *Sam Farley*

The Government argues for admission of the testimony of Sam Farley, who started working for Stratos in 2006. Sam Farley will testify that he was promised an annual salary of $75,000 with a $25,000 annual bonus, but that Stratos stopped paying him in 2007. Sam Farley also maintained a website recounting his interactions with Stratos and posting statements written by others about their interactions with Stratos. Sam Farley will testify that Stratos paid him $50,000 to remove the website. The Government argues that those payments can be traced to money received from the alleged Facebook fraud scheme.

The Court finds that Sam Farley's testimony that he received this money from Stratos is admissible and relevant to the charges of money laundering at issue in this case. However, his

testimony as to *why* he received the funds may be limited by the Court, as discussed below.

      The Government seeks to offer testimony from Sam Farley that he maintained a public website with Sheri Farley that included allegations from himself and different individuals that Stratos offended or defrauded these individuals in some way. The Court finds that this evidence may be admissible under Rule 404(b) as evidence of Stratos' motive to allegedly provide the false identity of Ken Dennis to Burns. However, at this point, the Government has failed to offer sufficient facts or evidence to demonstrate to this Court that Stratos' motive in paying Sam Farley was to hide previous frauds from Burns or provided motivation for Stratos' use of a fake name. The Court will address this specific evidentiary issue when motions in limine are heard on May 4, 2015. At that time, the parties will be permitted to submit additional argument on this issue. If the Court finds that testimony regarding Sam Farley's website is admissible, the Court has the discretion to limit such testimony to avoid undue prejudice under Rule 403.

      Finally, the Government is instructed to avoid eliciting testimony from Sam Farley that would seek to demonstrate that Stratos committed fraud against Sam Farley that was similar to the alleged fraud at issue in this case. While Sam Farley's testimony may be admissible under Rule 404(b) for the purpose of establishing his motive to use a false identity with the victim in this case, the Court finds that the alleged instance of wrongdoing against Sam Farley is not sufficiently similar to the instant action to establish a common plan or scheme under Rule 404(b).

      9.  *Chris Budenbender*

      The Government argues for admission of the testimony of Chris Budenbender, alleging he worked for Stratos in 2006 and was not paid salary as promised beginning March/April 2007. Budenbender will testify that he later received payments from Stratos in an effort to repay old debts. The Government maintains that the money was derived from the alleged Facebook fraud scheme.

      The Court finds that Budenbender's testimony that he received money from Stratos is admissible and relevant to the charges of money laundering at issue in this case. However, the Court finds that any testimony regarding *why* Stratos paid Budenbender, beyond a simple statement that he was paid monies owed, is unrelated to Counts 18–19 and therefore is not

admissible.

With respect to the admission of this evidence under 404(b), the Court finds that the alleged fraud is not sufficiently similar to the events in this case. There is no indication that Stratos induced Budenbender to give any money to Stratos for investment purposes, as allegedly occurred with Burns. Further, there is insufficient evidence to indicate that Stratos made any effort to fraudulently induce Budenbender to part with his money based on Stratos' representations. Therefore, Budenbender's testimony on this issue may not be admitted under Rule 404(b).

10. *Tara Graham*

The Government argues for admission of the testimony of Tara Graham, alleging that she worked for Stratos beginning in January 2007 and she was not paid salary as promised. Graham will specifically testify that the Stratos told her that he was worth millions of dollars based on his connection with a Middle Eastern prince. Graham will also testify that she later received payments from Stratos in an effort to repay old debts. The Government maintains that the money was derived from the alleged Facebook fraud scheme.

The Court finds that Graham's testimony that she received money from Stratos is admissible and relevant to the charges of money laundering at issue in this case. However, the Court finds that any testimony regarding *why* Stratos paid Graham, beyond a simple statement that she was paid monies owed, is unrelated to Counts 18–19 and therefore is not admissible.

With respect to the admission of this evidence under 404(b), the Court finds that the alleged fraud is not sufficiently similar to the events in this case. There is no indication that Stratos induced Graham to give any money to Stratos for investment purposes, as allegedly occurred with Burns. Further, there is insufficient evidence to indicate that Stratos made any effort to fraudulently induce Graham to part with her money based on Stratos' representations. Such testimony is hereby inadmissible.

11. *Jack Bartlett*

The Government argues for admission of the testimony of Jack Bartlett. Bartlett will testify that he worked for Stratos beginning in 2006, and he was not paid salary as promised in

11

2007. Bartlett will specifically testify that Stratos represented that he was worth millions of dollars based on his connection with a Middle Eastern prince. Bartlett will further testify that Stratos told him and other employees that he earned millions thought AOL stock and oil investments. In addition, Bartlett will testify that he later received payments from Stratos in an effort to repay old debts. The Government maintains that the money was derived from the alleged Facebook fraud scheme.

The Court finds that Bartlett's testimony that he received money from Stratos is admissible and relevant to the charges of money laundering at issue in this case. However, the Court finds that any testimony regarding *why* Stratos paid Bartlett, beyond a simple statement that he was paid monies owed, is unrelated to Counts 18–19 and therefore is not admissible.

With respect to the admission of this evidence under 404(b), the Court finds that the alleged fraud is not sufficiently similar to the events in this case. There is no indication that Stratos induced Bartlett to give any money to Stratos for investment purposes, as allegedly occurred with Burns. Further, there is insufficient evidence to indicate that Stratos made any effort to fraudulently induce Bartlett to part with his money based on Stratos' representations.

12. *Letters Written to Richard Hack*

The Government argues for admission of the testimony of Richard Hack, who will testify that Stratos told him that he made his millions through AOL investments and investments through his Middle Eastern partners. Hack will further testify that Stratos told him that he had a problem with making promises that he could not keep. Hack will also testify that Stratos told him that he would sometimes use the name "Troy Burton." The Government indicates that Hack will testify that Stratos left him in financial ruins, but does not make clear how that occurred. Hack was paid $25,000 from Stratos with money that the Government contends it can trace to the alleged Facebook fraud scheme.

The Court finds that Hacks' testimony that he received $25,000 from Stratos is admissible and relevant to the charges of money laundering at issue in this case. However, the Court finds that any testimony regarding *why* Stratos paid Hack, beyond a simple statement that he was paid monies owed, is unrelated to Counts 18–19 and therefore is not admissible.

Because Stratos authored the letters himself, Hack may testify regarding the letters he received from Stratos because they constitute the defendant's own admissions. However, because the Government has not alleged that Hack was the victim of conduct similar to that which is the subject of this case, Hack will not be permitted to testify about any representations Stratos made to him other than those which are evident in the letter. Such testimony would unfairly prejudice Stratos under Rule 403.

**IT IS SO ORDERED.**

Dated:  April 20, 2015

Troy L. Nunley
United States District Judge