UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>TROY STRATOS,<br><br>            Defendant. | No.  2:11-cr-00537-TLN<br><br>**SUPPLEMENTAL ORDER** |

      This matter is before the Court pursuant to additional briefing and submissions regarding Ms. Murphy's jewelry filed with the Court in accordance with the Court's January 20, 2017, Order (the "January 20 Order").  (ECF No. 359 at 11–12.)  The Government filed a supplemental memorandum (the "Supplemental Memorandum") and four attached exhibits (the "Supplemental Exhibits").  (ECF No. 362.)  Defendant filed a response to the Supplemental Memorandum ("Defendant's Response").  (ECF No. 370.)  The Government filed a reply ("Government's Reply").  (ECF No. 381.)  The Court has carefully considered the arguments raised by Defendant and the Government in these submissions, the submissions and arguments considered in the Court's January 20 Order, and the testimony heard during the restitution hearing held on December 12, 2016 (the "Restitution Hearing").  For the reasons set forth below, the Court awards Ms. Murphy $1,601,858 in restitution for the jewelry taken by Defendant in connection with the Jewelry Scheme (as defined in the January 20 Order).  This is in addition to the

$10,380,581 amount previously awarded to Ms. Murphy for her non-jewelry losses, which results in a total of $11,982,439 to Ms. Murphy in restitution. As provided in Section IV of the January 20 Order, the Court hereby confirms the restitution payment schedule set forth in that section.

## I.    PRELIMINARY MATTERS/FACTUAL AND PROCEDURAL BACKGROUND

This Order is supplemental to the Court's January 20 Order. Consequently, the Court will rely on its recitation of the standard of review in Section II of the January 20 Order. Likewise, the Court will set out below an abbreviated factual and procedural background sufficient to frame the issue presented — the proper restitution award for Ms. Murphy's jewelry losses in connection with the Jewelry Scheme.

In the January 20 Order, the Court found that Ms. Murphy "is a 'victim' within the meaning of 18 U.S.C. § 3663A(a)(2) with respect to the lost jewelry" given to Defendant in connection with the Jewelry Scheme. (ECF No. 359 at 7.) However, the Court also found that the $1,000,000 figure then sought by the Government was "not sufficiently supported by the evidence the Government [had] submitted to the Court." (ECF No. 359 at 9.) In short, the Government appeared to have arbitrarily selected this number because it was a "conservative[] estimate." (ECF No. 359 at 10.) This was despite the fact that the Government indicated that Ms. Murphy had separately "estimated her loss at approximately $1,500,000 and Defendant [had] acknowledged the replacement value of her jewelry was $2,000,000[.]" (ECF No. 359 at 11.) For these reasons, the Court gave the Government "an opportunity to demonstrate an appropriate figure for the jewelry that is supported by 'sufficient, reliable evidence'" and the Court specifically identified the matters the Government should address in its supplemental submissions. (ECF No. 359 at 7, 11.)

## II.   ANALYSIS

The Court will first address the parties' arguments relating to the proper restitution award for Ms. Murphy's jewelry. The Court will then briefly address two arguments raised by Defendant that were outside the scope of the requested briefing. (ECF No. 370 at 3–4.)

### A. Ms. Murphy Jewelry Losses

The Court orders restitution for Ms. Murphy in the amount of $1,601,858 for her losses in

connection with the Jewelry Scheme to be added to the $10,380,581 previously awarded to Ms. Murphy for a total of $11,982,439. The Court will first address whether the return of the jewelry is impossible, impracticable, or inadequate. The Court will then explain why the loss valuation is supported by sufficient, reliable evidence. Lastly, the Court will demonstrate why Defendant's four arguments to the contrary are unavailing.

>    *i.*     *Return of the jewelry is impossible, impracticable, or inadequate*

As a preliminary matter, the Court must address whether the Government has demonstrated the return of Ms. Murphy's jewelry is "impossible, impracticable, or inadequate" in accordance with 18 U.S.C. § 3663A(b)(1)(B) before proceeding to determine the value of the jewelry. The Government submitted a summary of a statement from Ms. Murphy indicating that the jewelry she gave to Defendant "has never been returned to her" and she "does not know the current location of the jewelry." (Government Exhibit 104, ECF No. 362-4 at 1.) The Government also notes that the jewelry was not located by the FBI during its investigation and has now been missing for approximately 10 years. (ECF No. 362 at 2.) Defendant neither asserts that any of the jewelry at issue has been returned nor challenges the Government's argument that the return of the jewelry at issue is "impossible" or "impracticable." (*See generally* ECF No. 370.) For these reasons, the Court finds that Ms. Murphy's jewelry has not been returned and the return of such jewelry is either "impossible" or "impracticable" within the meaning of with 18 U.S.C. § 3663A(b)(1)(B).

>    *ii.*     *Sufficient, reliable evidence supports loss valuation*

The Court finds that the Government has met its burden to establish that Ms. Murphy "suffered an actual loss in a quantifiable amount." *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013). The Court further finds the figure the Government seeks in restitution for the jewelry — $1,601,858— is supported by "sufficient, reliable evidence."[1] *United States v. Waknine*, 543 F.3d 546, 557–58 (9th Cir. 2008). The Court will first demonstrate that the

---

[1] The Government's submissions incorrectly state that the value of the jewelry provided in Government Exhibit 100 as $2,088,411 when that figure is $2,068,411. (*Compare* ECF No. 362 at 2 *with* ECF No. 362-1 at 5 *and with* ECF No. 343-14 at 2.) Because the amount requested is the difference between $2,068,411 and the figure provided in Government Exhibit 101, this leads the Government to mistakenly overstate their request by $20,000.

3

Supplemental Exhibits are in harmony with, and provide support for the Government's arguments relating to the proper restitution award for Ms. Murphy's jewelry. The Court will then address Defendant's four arguments.

Government Exhibit 100 (the "Jewelry Inventory") is the redacted inventory portion of an insurance policy for Ms. Murphy, dated March 20, 2006. (ECF No. 362-1). The Jewelry Inventory lists 47 items of jewelry, states a value for each item, and tabulates their total value at $2,068,411. (ECF No. 362-1.) This appears to be a portion of the insurance policy referenced in Exhibit 11 of the Declaration of Special Agent Phillips (the "Phillips Declaration"). (ECF No. 343-14 at 2 (stating an "[i]nsurance policy dated 3/06 valued [Ms. Murphy's jewelry] at $2,068,411").) The Jewelry Inventory is consistent with the recording of Defendant acknowledging that the replacement value of Ms. Murphy's jewelry was $2,000,000. (*See* ECF No. 359 at 11.) This supports the Government's earlier submission that at "at one point, [the jewelry received by Ms. Murphy during the course of her marriage to Eddie Murphy] was valued at approximately $2,000,000[.]" (Gov.'s Mot. to Correct the Presentence Investigation Report and Sentencing Mem., ECF No. 343 at 15.)

Government Exhibit 101 (the "Loss Report") is a redacted insurance loss report, dated March 8, 2007, listing seven of those 47 items with the same identifying number and dollar value assigned to them in the Jewelry Inventory. (ECF No. 362-2 at 2.) This exhibit indicates the stated value of these items totaled $466,553 and this report relates to the loss covered by a police report filed on or about October 18, 2006, with the Manhattan Beach Police Department.[2] (ECF No. 362-2 at 1.) This is consistent with the Phillips Declaration and supports the positions of the parties that a significant portion of Ms. Murphy's jewelry was not taken by Defendant. (*See* ECF No. 343-14 at 2 ("In Oct. 2006, Murphy filed a police report stating that $445,058 of her jewelry

---

[2] Neither the Government nor Defendant contests the valuation of the enumerated lost items or the summary contained in the insurance report. (*See generally* ECF Nos. 362, 370, 381.) Likewise, neither of the parties have suggested the lower dollar value in the Manhattan Beach police report somehow calls the value in the insurance report into question. (*See generally* ECF Nos. 362, 370, 381.) The insurance report indicates that Ms. Murphy's awareness of the fact that itemized jewelry had been lost unfolded over time and that the insurance report was filed several months after the police report. (ECF No. 362-2 at 1 (noting that Ms. Murphy filed her formal insurance claim more than a year after she first noticed some of her jewelry was missing because she initially believed it had been misplaced).) Lastly, no copy of the police report has been filed with the Court. For these reasons, the Court will use $466,553 for value of the seven items catalogued in the insurance report.

was lost or stolen sometime between Jan-Feb 2006 (not Stratos)."); ECF No. 343 at 15; Def.'s Sentencing Memorandum and Objections to the PSR, ECF No. 344 at 12 ("The jewelry reported stolen in the Manhattan Beach police report does not include the jewelry alleged to have been stolen by Mr. Stratos.")

Government Exhibit 102 is a summary (ECF No. 362-3) of an August 22, 2007, FBI interview with a source that the Government identifies as Ms. Murphy.  According to this summary, Ms. Murphy indicates Defendant wanted her to "participate in his business proposal, Collection X[,] . . . . to create a jewelry line for famous ex-wives" and that Ms. Murphy "gave her jewelry, approximately [$]1.5 million in value, to Stratos to have it appraised."  (ECF No. 362-3 at 2.)  This is in accord with the Government's earlier submissions.  (ECF No. 343 at 15 (stating that Defendant "told Ms. Murphy it was necessary to get the jewelry [she received or acquired during the course of her marriage to Eddie Murphy] reappraised . . . . [and that Defendant] promised Murphy that they would use the jewelry to create a line of reproductions called 'Collection X'").)  As described in greater detail below, this is consistent with the unobjected-to portions of the presentence report (the "PSR").  (*Compare* ECF No. 349 at ¶ 21 *with* ECF No. 344 at 12:9–16.)

Defendant's four arguments in support of his position that "the Court [still] does not have sufficient, reliable evidence from which to issue an appropriate restitution amount" for Ms. Murphy's jewelry are each without merit.  (ECF No. 370 at 3.)

Defendant first argues there is insufficient information provided with respect to the extent of Ms. Murphy's insurance coverage and what reimbursement Ms. Murphy may have received under that coverage.  This argument ignores the text of 18 U.S.C. § 3664 ("Section 3664"), and binding Ninth Circuit precedent applying it.  Section 3664(f)(1) provides that the district court "shall order restitution to each victim in the full amount of each victim's losses" and that "*[i]n no case* shall the fact that a victim has received or is *entitled to receive compensation* with respect to a loss *from insurance* or any other source *be considered* in determining the amount of restitution." Section 3664(f)(1)(A)-(B) (emphasis added).  Defendant seems to believe he is entitled to an offset if Ms. Murphy receives compensation under any insurance policy.  (*See* ECF No. 370 at 2–

3.) However, as Ninth Circuit precedent makes clear, whether an offset is appropriate is to be handled "separately" and "not as [a] reduction[] in the amount of that obligation in the first instance." *United States v. Bright*, 353 F.3d 1114, 1121 (9th Cir. 2004). Perhaps more importantly from Defendant's perspective, Defendant would not be entitled to an offset even if insurance payments are someday made to Ms. Murphy with respect to any of her loss covered the Court's restitution order. *See* Section 3664(j)(1) ("*If a victim has received compensation from insurance* or any other source with respect to a loss, *the court shall order that restitution be paid to the person* who provided or is obligated to provide the compensation[.]") (emphasis added). Defendant would simply owe restitution to the insurance company. *See id*. Consequently, contrary to Defendant's assertion, the scope of Ms. Murphy's insurance coverage is irrelevant to the Court's task here — ordering restitution in the full amount of Ms. Murphy's loss.

Defendant's second argument is more of an observation without analysis — the Loss Report indicates there were additional pieces of jewelry that may have been lost or taken by someone other than Defendant that were *not listed in the Jewelry Inventory*. (ECF No. 370 at 2.) This observation is irrelevant. The Government is only seeking restitution for the 40 items of enumerated jewelry, each of which *is listed on the Jewelry Inventory*. (*See* ECF No. 362 at 2; ECF No. 381 at 1–2.) That Defendant is not to blame for the loss of other items has no bearing on the issue before the Court because no one is seeking to have Defendant pay restitution for such items.

Defendant's third argument is that Ms. Murphy still has not provided information as to which items were taken by Defendant. This argument also fails. As a preliminary matter, the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the *attorney for the Government*," not the victim. Section 3664(e) (emphasis added); *see also Waknine*, 543 F.3d at 558 ("[I]t is the responsibility of the government, aided by the victim, to provide adequate reliable evidence."). While *Waknine* made clear that "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order," it made equally clear that this is not the only means of doing so. *Id*. at 557–58. As noted in the January 20 Order, a "district court may properly rely on unobjected-to portions of the presentence

6

report . . . for purposes of determining restitution." (ECF No. 359 at 5 (citing *United States v. James*, 616 F. App'x 348, 349 (9th Cir. 2015)).) Defendant's suggestion that it is somehow outcome determinative that the Government did not "not specifically ask[] which items of jewelry" she gave to Defendant during her January 27, 2017 interview is plainly wrong. (ECF No. 370 at 2.)

The Government's original (and current) position is that Ms. Murphy was deceived into giving Defendant all of her jewelry that remained after an earlier loss unrelated to Defendant. (ECF No. 343 at 15; *see also* ECF No. 381 at 1.) Part of Defendant's ruse was that it was "necessary" to have the jewelry she received from her former husband "reappraised." (ECF No. 343 at 15 (noting that he "also promised . . . that they would use the jewelry to create a line of reproductions called 'Collection X'").) The Government has consistently made clear that Ms. Murphy had lost some of her collection, once valued at approximately $2,000,000, "*before she gave the rest* to Stratos." (ECF No. 343 at 15 (emphasis added); *see also* ECF No. 381 at 1.) This is supported by the relevant unobjected-to portion of paragraph 21 of the PSR which reads in relevant part: "Murphy trusted Stratos with the jewelry given to her by Eddie Murphy, *both in order to get it properly appraised for insurance purposes* and because it was to be used to create a line of jewelry called 'Collection X.'"[3] This is further supported by Government Exhibit 102, which indicates Ms. Murphy made statements to this effect more than nine years ago that gave an estimated dollar figure that was consistent with value of the jewelry provided in the Jewelry Inventory after accounting for the pieces identified as missing in the Loss Report. (*See* ECF No. 362-3 at 2.) Taking the Jewelry Inventory and Loss Report together, it is quite apparent which items the Government is identifying as having been taken by Defendant. The suggestion that Ms. Murphy gave Defendant less than all of her jewelry remaining in her possession is belied by his own acknowledgement that the replacement value of the jewelry she gave to him was

---

[3] As noted in the January 20 Order, the discussion of jewelry in Defendant's objections to the PSR was limited to a single paragraph relating to the calculation of loss for purposes of U.S.S.G. § 2B1.1(b)(1). In the words of the January 20 Order, "[e]ven the most generous reading [of that paragraph] cannot reasonably be construed to dispute" the quoted portion of paragraph 21 of the PSR. (*See* ECF No. 359 at 7–8.) Neither can Defendant's Response, which never mentions the presentence report. (*See generally* ECF No. 370.)

$2,000,000.[4]

Defendant's fourth argument is again more of an observation without analysis — some of the items on the Jewelry Inventory were "generic, store-bought jewelry" that it would make no sense to replicate. (ECF No. 370 at 2.) Most likely this is rehashing of his third argument. To the extent it is, it is rejected for the reasons already mentioned. However, arguably Defendant's position is that he should not be held responsible for any items of jewelry unless those items are of a type that would have made sense to have "replicated for Collection X." (ECF No. 370 at 2.) This contention suffers from the obvious problem that "'Collection X' was not an actual project." (ECF No. 359 at 8.) Moreover, Defendant would essentially be making a variant of the "unreasonable victim" argument that has long been rejected in the Ninth Circuit. *See Lemon v. United States*, 278 F.2d 369, 373 (9th Cir. 1960) ("It is immaterial whether only the most gullible would have been deceived by [defendant's] technique. [18 U.S.C. § 1341 (mail fraud)] protects the naive as well as the worldy-wise, and the former are more in need of protection than the latter."); *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir. 2000) (noting the same is true for 18 U.S.C. § 1343 (wire fraud).) If it is Defendant's view that he preyed upon a naive or gullible victim, this provides no basis for reducing the amount of restitution that he owes her. *See United States v. Rosby*, 454 F.3d 670, 677 (7th Cir. 2006).

For the foregoing reasons, the Court finds that the Government has satisfied the *Waknine* standard and that a restitution award of $1,601,858 for Ms. Murphy's jewelry is supported by "sufficient, reliable evidence." *Waknine*, 543 F.3d at 557–58.

B.     Whether Defendant's Restitution Order May Be Reduced

Although not within the scope of the additional briefing ordered by the Court, Defendant has requested that the Court "acknowledge that any money received by the victims shall be credited to the restitution order pursuant to 18 U.S.C. § 3664" and suggested the Court should order ESG Capital Partners LP to "provide settlement information if the Facebook victims have or will be reimbursed." (ECF No. 370 at 4.) The Court will briefly respond to the first point and

---

[4] The Court notes that neither party has made any argument nor cited the Court any evidence that Defendant was aware that a subset of Ms. Murphy's jewelry had been lost or misplaced prior to Defendant receiving any of Ms. Murphy's jewelry. This may explain why Defendant believed the replacement value of the jewelry was $2,000,000.

deny the request for such an order.

Defendant requests an acknowledgment of a statement that is an ambiguously worded oversimplification of Section 3664 and which could be construed as a misstatement of the law. This request seems to be premised on Section 3664(j)(1)-(2), which Defendant block quotes without further explanation. (ECF No. 370 at 3.) It also appears to refer to three sources of money that Defendant speculates his victims either have received or may receive someday. These are as follows: (i) insurance payments compensating Ms. Murphy for her jewelry; (ii) a settlement that Defendant speculates may have been reached in the "civil case filed by ESG, the clients of Tim Burns"; and (iii) a potential settlement that might one day occur in a civil case by Ms. Murphy "in Broward County, Florida against Bank of America." (ECF No. 370 at 3–4.)

To the extent Defendant uses "credited to the restitution order" to mean the amount of money he owes will be reduced, Defendant's request for acknowledgment is simply mistaken as applied to possible insurance payments Ms. Murphy may receive for the reasons already discussed in Section II.A of this Order. (*See* ECF No. 370 at 4.)

With respect to the second and third categories, the Court declines to speculate whether they are (or may in the future be) covered by Section 3664(j)(2). As the Ninth Circuit noted, "[t]he purpose of [that subsection] is to prevent double recovery by a victim." *United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002). However, this subsection only applies if (i) the victims actually receive money, *Bright*, 353 F.3d at 1122–23, and (ii) that money is compensation for the "same loss for which [the] defendant is liable, *Stanley*, 309 F.3d at 613. "The MVRA does not stipulate which party bears the burden of proving entitlement to an offset." *United States v. Ruff*, 420 F.3d 772, 775 (8th Cir. 2005.) Rather, Section 3664(e) provides the burden "shall be upon the party designated by the court as justice requires." Accordingly, the Court designates that the burden shall be upon the party seeking reduction or offset under Section 3664(j)(2). This will also be the case for a party seeking modification of the restitution order pursuant to Section 3664(j)(1). The Court finds the interests of justice are best served by placing the burden on the party most incentivized to litigate these issues vigorously. *See United States v. Franklin,* 595 F. App'x 267, 271 (5th Cir. 2014) (noting that a defendant seeking to reduce the

9

amount of restitution he has to pay is strongly incentivized to litigate the particular issues involved).

The Court denies Defendant's request that the Court order ESG Capital Partners LP to "provide settlement information if the Facebook victims have [been] or will be reimbursed." (*See* ECF No. 370 at 4.) Defendant has failed to cite any legal authority in support of this request. In fact, Defendant has not bothered to articulate any legal basis for the Court to issue such an order. However, the Court does order the Government to notify Defendant if the Government comes into possession of such information so the Defendant may properly file a request for modification of restitution pursuant to Section 3664(j)(2). If such a request is made, Defendant's speculation that an amount may have been paid will not suffice. Further, such a request shall include an adequate description of the lawsuit at issue so that it is ascertainable that it relates to the loss covered by the Court's restitution order. (*See* ECF No. 370 at 3 (failing to indicate the defendant(s) involved and subject matter at issue in the suit "filed by ESG").)

### III. CONCLUSION

For the reasons set forth above, the Government's request for restitution is GRANTED. Accordingly, IT IS HEREBY ORDERED that:

1. Defendant shall pay Ms. Murphy $1,601,858 in restitution for the jewelry taken by Defendant. This is in addition to the $10,380,581 previously awarded to Ms. Murphy for her non-jewelry losses. Ms. Murphy's total award of restitution is $11,982,439.

2. As provided in Section IV of the January 20 Order, the Court hereby confirms the restitution payment schedule.

IT IS SO ORDERED.

Dated: February 27, 2017

Troy L. Nunley
United States District Judge