UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>TROY STRATOS,<br><br>Movant. | No. 2:11-cr-0537 TLN AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Movant, a federal prisoner proceeding through counsel, brings a motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. ECF No. 417. The United States filed an opposition, ECF No. 432, and movant replied, EC F No. 442. The government filed an unauthorized surreply. ECF No. 443.

I.  BACKGROUND

A. Pretrial Proceedings

On December 16, 2011, the grand jury returned a fourteen-count indictment charging Stratos with mail fraud, wire fraud, and money laundering. ECF No. 1. The charges arose from an alleged scheme to defraud Nicole Murphy out of the proceeds of her divorce from actor Eddie Murphy. Stratos was also charged with obstruction of justice for his actions in relation to a grand jury subpoena. Id.

Stratos was detained pending trial, and ongoing investigation led to a superseding

1

indictment returned on May 23, 2013, based in part on conduct that occurred during his detention. The superseding indictment added four counts of wire fraud related to an alleged scheme to obtain client money from a financial services manager, by falsely promising it would be invested in Facebook through the pre-IPO purchase of shares. ECF No. 58. The superseding indictment also added two additional counts of money laundering. Id.

On January 14, 2014, the court granted in part a defense motion to sever counts. ECF No. 78. It was ordered that the counts related to the Facebook scheme would be tried separately.

B. Trial on the Facebook Counts

The case eventually proceeded to trial on the Facebook counts first. Trial began on May 4, 2015. ECF No. 189.

1. Prosecution Case

The government called thirty-one witnesses. ECF Nos. 193-196, 198-199, 207. In sum, the prosecution presented evidence that Stratos used the alias "Ken Dennis" (the name of his half-brother) and claimed to represent Carlos Slim (the Mexican business magnate who was, at the time, reported to be the wealthiest man in the world), in conversations with the Chief Financial Officer of Facebook, various Silicon Valley entrepreneurs and brokers, and financial middle-man Joseph Schnaier. Schnaier introduced Stratos to Tim Burns, a financial manager in Pennsylvania who was in the market to buy pre-IPO Facebook shares for some clients of his firm, ESG. Stratos, posing as "Ken Dennis," falsely told Burns that his client Carlos Slim was in the process of purchasing a large block of such shares from Facebook employees and founders, and that he could make available to Burns a significant volume of shares in excess of what Slim wanted for himself. Stratos made false representations about his connections to Facebook insiders including Mark Zuckerberg and Facebook's CFO, and told Burns that the transaction was a company-sponsored deal with Mr. Slim. Stratos promised Burns that monies deposited would be refunded if the deal did not close.

Based on these representations, Burns sent three wire transfers of ESG client funds to secure the anticipated purchase of Facebook shares. One transfer was sent to a law firm trust account and two to bank accounts in the name of Soumaya Securities, which Stratos told Burns

was a company affiliated with Carlos Slim but which was actually controlled by Stratos. Burns considered these payments to be a purchase deposit or a fee to Soumaya Securities and "Ken Dennis." However characterized, the monies were to be refunded to Burns if the deal did not close. There was no closing, however, because there had never been a deal; Stratos diverted the finds to his own private use.

After Stratos's arrest by the FBI on December 20, 2011, he instructed Susan Sweeney and Betty Elbaz to send text messages to Burns assuring him that the deal would close shortly and that there had been an unexpected delay. These included messages that Stratos dictated while in custody at the Sacramento County Jail and which were sent to Mr. Burns in January 2012. In February 2012, Stratos continued to make misrepresentations to Mr. Burns by telephone about the deal and about him refunding money to Mr. Burns. In truth, there never was any deal to close or money left to refund.

Burns testified in accordance with his plea agreement in a case brought in the Eastern District of Pennsylvania involving embezzlement of client funds.[1]

### 2. Defense Case

The defense called four witnesses: Peter Healy, Jared Scholl, Walter Urban and David Weiner. ECF No. 207. All were called to either impeach Tim Burns' testimony (Urban and Weiner) or to testify as to his character for dishonesty (Healy and Scholl).[2] ECF Nos. 330 (transcript of Healy testimony), 331 (transcript of Scholl testimony), 332 (transcript of Urban testimony), 333 (transcript of Weiner testimony).

### 3. Outcome

On May 19, 2015, the jury returned a verdict of guilty on all six counts. ECF Nos. 210, 215. Stratos remained in custody awaiting trial on the remaining counts, with the second trial

---

[1] Burns testified that he "borrowed" client funds to purchase a vacation home when repeated delays of the "Ken Dennis" Facebook deal resulted in his own cash-flow shortage. Prior to his involvement in the Facebook scheme, he had stolen client money to purchase an office building.
[2] Scholl, who had worked for Burns at ESG, testified that be believed due to the embezzlement and its aftermath that Burns was not a truthful or honest person. ECF No. 331. Healy, a lawyer who had handled some Facebook stock transactions involving Burns, testified that he did not have enough experience with Burns to form an opinion as to his honesty. ECF No. 330.

3

scheduled to begin on October 5, 2015.  ECF No. 210.

### C. Post-Trial Motions for New Counsel and New Trial

In July 2015, defense counsel filed a motion to withdraw.  ECF No. 221.  Counsel represented that Stratos believed that his attorneys from the Office of the Federal Defender had been ineffective and that he had lost faith in them.  Counsel declared a conflict of interest.  Id.  The motion was heard on July 30, 2015.  ECF No. 224.  Following a colloquy with Stratos and Federal Defender Heather Williams, the district judge granted the motion.  Id.; see also ECF Nos. 235 (transcript filed under seal), 253 (redacted transcript).  The court found that Stratos had lost the trust and confidence in his attorney necessary for continued representation; there were no findings as to ineffective assistance of counsel.  ECF No. 235 at 64-65.  Thomas A. Johnson was subsequently appointed to represent Stratos, ECF No. 225, and the second trial date was vacated, ECF No. 228.

A motion for a new trial on the Facebook counts was filed on November 24, 2015, on the ground that Stratos had not been adequately informed by trial counsel that he had the right to testify on his own behalf.  ECF No. 238.  The motion was ultimately denied as untimely.  ECF No. 260.

### D. Guilty Pleas on Remaining Counts

A trial confirmation hearing was held on August 18, 2016, and a trial schedule for the remaining counts was confirmed.  ECF No. 277.  On August 25, 2016, at the request of defense counsel, a change of plea hearing was set for the following week.  ECF No. 279.  On August 31, 2015, Stratos entered open pleas of guilty to the remaining charges.

### E. Sentencing

The Presentence Investigation Report found the total offense level to be 39.  PSR (ECF No. 349) ¶ 64.  This included a four-level enhancement for substantial financial hardship to five or more victims, in that they lost savings for college and/or retirement savings, or had to delay their retirements, pursuant to USSG §2B1.1(b)(2)(B).  PSR ¶ 59.  Stratos objected to this enhancement, claiming that these victims were defrauded by Tim Burns as opposed to Stratos, but the Probation Office disagreed with this objection.  ECF No. 344 at 4-5; PSR ¶ 59.  The PSR also

included an unopposed two-level abuse of trust upward adjustment, as Stratos was placed in a position of trust by Murphy with respect to the management of her assets. PSR ¶ 62. The advisory Sentencing Guidelines range was 262 to 327 months imprisonment. PSR at p. 30. The Probation Officer recommended a sentence of 327 months, at the high end of the Guidelines. Id. In justification for the high-end sentence, the PSR explained:

> The defendant is a con artist. Over his lifetime, it is unknown how many people he has taken under his spell and deceived. He manipulated his friend of over $10,000,000, stole millions from a woman whom he called his "benefactor," and defrauded investors of over $11 million with the promise they would be purchasing Facebook shares, pre-IPO. He "robs Peter to pay Paul," looking for a quick dollar to move on to the next scheme. He tells partial truths and then embellishes the rest. The defendant used the money from his schemes for his own personal benefit and lived a very lavish lifestyle. He frequently refers to celebrities and other socialites or claims to know people of high-ranking corporations or countries to impress others. The defendant has schemed his way through life, relying on the generosity of others and then duping them.

Id.

At the sentencing hearing on December 12, 2016, the court found that a four-level increase applied under U.S.S.G. § 2B1.1(b)(2)(B) due to five or more victims suffering a substantial financial hardship. ECF No. 380 at 43. The court noted that there was not "any dispute" that "five identified investors in Burns' funds suffered substantial hardship." Id. at 44. The court also rejected Stratos's argument that those investors' losses were not foreseeable to Stratos, finding that "the testimony that was heard at trial makes clear that the harm to those investors was reasonably foreseeable to this defendant." Id. The court sustained a defense objection to the loss amount and accordingly found that the total offense level was 37 rather than 39, which resulted in an advisory sentencing range of 210 to 262 months. Id. at 69-70. The court then heard from some of Stratos's victims, and Stratos allocuted. Id. at 73-92. Stratos was sentenced to 262 months' imprisonment, followed by a 36-month term of supervised release, $2,000 special assessment, and $23,232,439.01 restitution. ECF No. 346, 348, 391.

F.  Appeal

Stratos appealed the sentence on the grounds that (1) the district court incorrectly applied the four-level enhancement for the offense resulting in substantial financial hardship to five or

more victims; (2) the district court incorrectly imposed the two-level enhancement for abuse of trust; and (3) the sentence was substantively unreasonable. ECF No. 432-1 (Appellant's Opening Brief). Movant did not challenge any aspect of his conviction or raise any pre-trial or trial-related issues. Id.

## II. THE MOTION AND BRIEFING

Movant presents the following claims for relief: (1) ineffective assistance of trial counsel related to investigation and pre-trial preparation, witness examination and presentation of evidence at trial, failure to advise Stratos of his right to testify, failure to timely file a motion for new trial, and sentencing; (2) failure of the trial court to sua sponte order a new trial in light of counsel's deficient performance; (3) unconstitutional sentence; (4) U.S. Sentencing Guidelines error; (5) speedy trial violation; (6) Brady violations; and (7) miscellaneous judicial errors. ECF No. 417.

The United States responds that (1) the entire motion should be dismissed for lack of evidence; (2) the sentencing claims are barred by the law of the case doctrine and are meritless; (3) the new trial, speedy trial and Brady claims are procedurally barred and meritless; and (4) movant has not presented a prima facie case of ineffective assistance of counsel. ECF No. 432.

In response to the government's attack on the motion's lack of supporting evidence, movant's reply includes as attachments a declaration by Stratos and exhibits from litigation involving Tim Burns. ECF No. 442 (and attachments at 442-1 and 442-2). The government's unauthorized surreply, ECF No. 443, objects to consideration of facts not included in the § 2255 motion, and argues that all claims fail even if the evidence is considered. Because movant's reply included material not previously before the court, to which the government has a right to respond, the undersigned will consider the surreply.

## III. STANDARDS FOR REVIEW UNDER 28 U.S.C. § 2255

A federal prisoner making a collateral attack on the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under section 2255, the district court may grant relief if it concludes that a

sentence violates the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).  Both the grounds for relief and the scope of the remedy in a section 2255 proceeding are identical to those available to state prisoners under 28 U.S.C. § 2254, the federal habeas corpus statute.  Davis v. United States, 417 U.S. 333, 343-44 (1974).

The district court must grant a hearing to determine the validity of a petition brought under section 2255, unless the record conclusively shows that the prisoner is entitled to no relief. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  In other words, an evidentiary hearing is required if (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief.  United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004).  Relief may be summarily denied without a hearing if the motion contains no more than conclusory allegations.  United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986); see also Howard, 381 F.3d at 879.

IV.   DISCUSSION

    A.   Ground One: Ineffective Assistance of Counsel

        1.   Movant's Allegations and Pertinent Record

Both the section 2255 motion itself and movant's reply to the government's opposition consist in substantial part of run-on narrative and jumbled laundry lists of alleged attorney errors too numerous to count or even coherently organize for purposes of analysis.   This is the habeas pleading equivalent of the "kitchen sink" criminal appeals and civil complaints that the Ninth Circuit and other federal courts have repeatedly disparaged as ineffective advocacy.  See, e.g., Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997) ("A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court." (citation omitted)); see also Gurman v. Metro Housing & Redevelopment Authority, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).[3]  In essence, movant invites this court to review everything that

---

[3] "The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the
(continued….)

7

trial counsel did in this case in search of subpar performance of constitutional dimension. That invitation must be refused.

Below the court outlines what appear to be movant's primary complaints.[4]

### a. Pretrial investigation

Movant alleges that counsel was ineffective in failing to obtain a forensic examination of the Stratos computer to "account for the transactions introduced or erased… during the month Ken Dennis had it before he turned it over to the FBI and prosecutors." ECF No. 417 at 10.[5] Counsel is also faulted for failing to obtain Ken Dennis's phone, phone records and bank records, and to obtain a forensic examination of Ken Dennis's computer. Although it is not entirely clear, the motion insinuates that the real Ken Dennis was implicated in the Facebook scheme and gave false testimony against Stratos. Id.

Similarly, the motion alleges that there was no forensic examination of Joe Schnair's phone or computer, which would have shown his own involvement and impeached his testimony. Id. at 11.

### b. Witness examination

Movant alleges that trial counsel performed deficiently in cross-examining Ken Dennis. ECF No. 417 at 6-7. Movant identifies numerous questions that were not asked of the witness,

---

burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. . . . It is the plaintiff['s] burden… to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Id.

[4] The court here outlines the issues presented in the § 2255 motion, which is the operative pleading. Additional matters raised for first time in the reply are disregarded. See Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."); see also, e.g., Lopez v. Dexter, 375 F. App'x 724 (9th Cir. 2010) (finding district court appropriately rejected movant's claim on the basis that it improperly surfaced for the first time in his traverse to the answer); see also United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

[5] Ken Dennis is the family member (variously referred to as defendant's stepbrother or half-brother) whose name Stratos used in communications regarding the Facebook scheme. Movant here alleges that Dennis was the CEO of Soumaya Securities, ECF No. 417 at 6, and implies that he was culpable in unspecified ways. Dennis testified at trial that he had helped Stratos to get a taxpayer ID number and open a bank account for the LLC, but played no role in its operation.

but he does not allege what the answers would have been. See id.

Movant also alleges that counsel failed to call "necessary rebuttal witnesses," but the witness testimony at issue is not clearly specified. The motion mentions "Roberto Carillo" and Jared Scholl in this context, and also asserts in conclusory fashion that the defense should have called "the attorneys involved in drafting the Tim Burns contract which no one produced, as well as Jared Scholl." ECF No. 417 at 5, 6. The motion does not make any specific allegations about the substance of rebuttal testimony which could have been presented.

The most important rebuttal witness not called due to counsel's ineffectiveness is movant himself. Id. at 7. The motion does not specifically allege what rebuttal testimony Stratos would have provided, but movant's reply is supported by a declaration providing his self-exculpatory narrative. ECF No. 442-1.

### c. Failure to present exculpatory evidence

Movant alleges that counsel was ineffective in failing to produce the contract between Burns and Soumaya Securities, and to confront Burns with it. ECF No. 417 at 11-12. The contract would have shown that the money wired by Burns was a finder's fee and not purchase money for shares. Id. No contract is provided, nor are the date and specific terms of a contract specified.

The defense also failed to utilize the work product of a paralegal, whose accounting could have been used to achieve dismissal of the Nicole Murphy counts. Id. at 9. Neither the referenced documents nor their substance are provided.

Movant alleges that he was prejudiced by the failure to present evidence showing "the timing and purpose" of Tim Burns' embezzlement. Id. at 5. The details and exculpatory value of this information is not explained in the § 2255 motion.

### d. The new trial motion

Movant alleges that trial counsel Heather Williams was ineffective in failing to timely move for a new trial, based on her own ineffectiveness, before seeking to withdraw. ECF No. 417 at 12-13. Williams also failed to apprise movant of his right to move for a new trial and the time in which to do so. Id. A new trial motion should have been brought on the basis of

counsel's ineffectiveness in failing to tell movant that he had a right to testify in his own defense, as well as all the other errors and omissions described above.

### e. Sentencing

Movant alleges that successor counsel Tom Johnson was ineffective at sentencing. ECF No. 417 at 13. Counsel failed to prepare Stratos for effective allocution, did not prepare a strong cross-examination of Nicole Murphy, and offered no mitigation. Id. at 16. Counsel failed to present Nicole Murphy's bank records and retain a forensic expert to address them. Id. at 5, 10. The defense failed to utilize the work product of a paralegal who worked for previous counsel, who had "accounted for all the money Nicole Murphy claimed she lost, showing Stratos did not defraud her." Id. at 9; see also id. at 17 ("The defense could have showed she was not a victim of any crime."). Stephen Beedle, the attorney who drafted the trust agreement between Murphy and Stratos, could have testified to their equal and joint control, which would have "refuted Nicole's crying and acting as if she were grievously wronged by Stratos." Id. at 18; see also id. at 19.

As to the Facebook counts, counsel failed to present evidence that Burns had repaid ESG investors, which should have limited movant's restitution and defeated any claim of substantial hardship. Id. at 15-16. Generally, movant contends that counsel failed to make it clear that if there were any actual ESG victims, they were victims of Burns and not of Stratos.

### 2. Governing Legal Standards

The Sixth Amendment guarantees "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). To establish a constitutional violation based on ineffective assistance of counsel, a movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). In assessing counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Id. at 689. Courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Prejudice means that the error actually had an adverse effect on the defense. Id. at 693. There must be a reasonable probability that, but for counsel's

1   errors, the result of the proceeding would have been different.  Id. at 694.  A reasonable
2   probability is a probability sufficient to undermine confidence in the outcome.  Id.  The court
3   need not address both prongs of the Strickland test if the movant's showing is insufficient as to
4   one prong.  Id. at 697.

### 3. Analysis

There is no need for a hearing on movant's ineffective assistance of counsel claim because the petition, files, and record of the case conclusively show that the petitioner is not entitled to relief.  See Howard, 381 F.3d at 877.  As the above summary of the claim indicates, movant's allegations of ineffectiveness are largely conclusory and factually unsupported.  "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); see also Quan, 789 F.2d at 715 (§ 2255 motion may be summarily denied without a hearing if based on conclusory allegations).

#### a. Pretrial investigation

Movant argues that his lawyers should have obtained forensic examinations of various devices in order to develop impeachment evidence related to Ken Dennis and Joe Schnair, but he makes no proffer of the evidence which would have been identified by such examination.  It is axiomatic in the Strickland context that when a petitioner alleges that certain evidence should have been developed and presented at trial, he must proffer the evidence on which he relies so that the reviewing court may assess whether that evidence would likely have changed the result.  See Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test.").

#### b. Witness examination

As to counsel's examination of prosecution witnesses at trial, movant's general attack on counsel's style and level of polish do not plausibly implicate Sixth Amendment performance standards.

As to counsel's alleged failure to call "rebuttal" witnesses, movant barely identifies the available witnesses and utterly fails to specify the testimony they would have provided.  There is

no explanation in the § 2255 motion of the significance of "Roberto Carillo."[6] As for Jarod Scholl, he testified for the defense. ECF No. 331. Accordingly, the record affirmatively disproves the allegation that counsel failed call him as a witness. Moreover, the defense sought to have Scholl testify to specific instances of Tim Burns' dishonesty, an issue that was fully litigated. See ECF Nos. 200, 201 (briefing). The court limited Scholl's testimony under Rules 608(b) and 404(b) of the Federal Rules of Evidence, ECF No. 202, but counsel did attempt to introduce it. The § 2255 motion does not include any proffer of additional testimony that Scholl could have provided. The "attorneys involved in drafting the Tim Burns contract" are not identified, nor is their available testimony specified. These allegations accordingly fail to state a claim under Strickland. See Hendricks, 70 F.3d at 1042.[7]

As to counsel's failure to call Stratos himself as a witness, the § 2255 motion is itself equally silent as to the testimony which would have been presented. Movant attempts to cure this pleading defect by attaching a declaration to his reply. See ECF No. 442-1. Even if the court were to consider this declaration as a proffer in support of Strickland's prejudice prong,[8] it would not save the claim. Stratos' declaration amounts in large part to a recitation of his grievances about his lawyers from the Federal Defender's Office, which were previously aired at the Marsden hearing. Compare ECF No. 235 (transcript of hearing) with ECF No. 442-1 (declaration). He presents his own theory of his innocence, which (as related to the Facebook counts) is that Burns gave him ESG money as a finder's fee in exchange for introductions, not as purchase funds, and that he and Burns ended up in a "contract dispute" over whether a refund was

---

[6] At the Marsden hearing, there was discussion of Stratos' request that counsel call Roberto Luis Rodriguez Carrillo, the supposed connection between Stratos and the Slim family, to testify. Counsel explained that Rodriguez Carrillo initially gave unfavorable information, and later could not be reached. ECF No. 235 at 13, 41-42.

[7] To the extent that the Declaration of Troy Stratos (ECF No. 442-1), which is attached to the reply, includes statements about the knowledge and/or potential testimony of other people, it is not competent evidence on those matters. Accordingly, it adds nothing to the ineffective assistance subclaims regarding the failure to call witnesses other than Stratos.

[8] The United States objects to consideration of the declaration. ECF No. 443 at 1-2. It is well established that new grounds for post-conviction relief may not be presented in a traverse or reply. See Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994). The court will nonetheless address the declaration in order to explain why it does not change the propriety of summary denial.

owed. ECF No. 442-1 at 13. Even if movant had testified that this was the case, there is little likelihood of a different result because the jury heard an abundance of evidence that Stratos had made false statements to Burns about his relationships to the Slims and to various Facebook founders, officers and shareholders; that movant had falsely represented to Burns that he was in the process of facilitating a sale of shares from Facebook to Carlos Slim; that Burns had relied on those misrepresentations in deciding to transfer ESG funds to Soumaya Securities; that there was in fact no pending sale of shares; and that Stratos diverted the funds to his own use. Even if movant testified that the monies had been intended as a finder's fee and he therefore believed them to be non-refundable, Burn's testimony and the numerous written communications introduced into evidence by the prosecution supported the conclusion that Burns had been assured that the monies—however characterized—would be refunded if the sale of shares did not go through. In light of the evidence as a whole, it is not plausible that the jury would have credited movant's self-serving testimony and, on that basis, rejected all the prosecution's evidence. Without a reasonable probability of that outcome, movant cannot prevail. See Strickland, 466 U.S. at 694.[9]

          c. Failure to present exculpatory evidence

Movant does not state a claim for relief based on counsel's failure to introduce the contract between Soumaya and Burns and/or ESG, because he has not presented facts sufficient to demonstrate that such a contract existed and would have been exculpatory.[10] Movant's theory seems to be that the contract would have demonstrated that monies deposited by Burns were

---

[9] As to the Nicole Murphy counts, movant's protestations of innocence in the declaration cannot be credited in light of his guilty plea, Rule 11 colloquy, and agreement to the factual basis for the plea. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); Muth v. Fondren, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's sworn statements at the plea colloquy carry a strong presumption of truth.").

[10] The evidence at trial included letters and other communications memorializing various terms of the deal Tim Burns made with the person he knew as Ken Dennis (movant). Burns testified that there was no written agreement regarding refundability, and that he relied on communications with "Ken Dennis" and his counsel. ECF No. 301 at 80; see also id. at 211 (Burns' further testimony that there was no contract with Soumaya regarding the deal).

13

intended as a finder's fee rather than as purchase funds.  For the reasons explained above regarding Stratos' proffered testimony on the topic, this would have had no likely effect on the verdict.  In any event, movant is not entitled to a hearing based on conclusory allegations unsupported by a showing sufficient to support Strickland's prejudice prong.  See Hendricks, 70 F.3d at 1042.

### d. The new trial motion

To the extent that movant alleges Heather Williams performed unreasonably by not filing a timely new trial motion before her withdrawal, based on her own ineffectiveness and that of her co-counsel, the claim fails.  Because none of the allegations regarding counsel's underlying acts and omissions state a claim under Strickland for the reasons already explained, the failure to bring a new trial motion on those grounds cannot have prejudiced Stratos.  On the specific issue of counsel's alleged failure to have advised movant of his right to testify, the record as a whole demonstrates that movant is not entitled to relief.  See ECF No. 257 (stipulation regarding testimony of former defense team members about movant's express choice not to testify).

To the extent that movant challenges successor counsel's performance on the new trial motion that was brought later and denied as untimely, the district judge found that movant had forfeited the underlying issues by not raising them sooner.  See ECF No. 260 (order denying motion for new trial) at 4.

### e. Sentencing

As to sentencing, movant's protestations of innocence vis-à-vis the Nicole Murphy counts must be disregarded.  See supra, n. 9.  The related allegations that counsel was ineffective in failing to produce paralegal accounting work product, the victim's bank records, a forensic analysis of those records, and testimony from the attorney who drew up a trust agreement between movant and Murphy, are all unsupported by a showing of what evidence could have been presented that would have likely affected the sentence.  Accordingly, these allegations cannot support relief.  See Hendricks, 70 F.3d at 1042.

As for sentencing issues related to the Facebook counts, the § 2255 motion alleges in conclusory fashion that evidence could have been presented to show that Burns had repaid ESG

investors, thus limiting movant's restitution obligation and defeating the assertion that multiple victims had experienced substantial hardship. Attached to the reply brief are documents in support of the theory that counsel should have made it clear to the court that any ESG victims were victims of Burns, not Stratos. ECF No. 442-2. Movant presents no coherent legal argument about how any of this would have affected the outcome at sentencing.

Moreover, contrary to movant's representations, counsel did argue that because the investors had been defrauded by Tim Burns, four levels should not be added for the number of victims. ECF No. 344 (objections to PSR) at 4-8. Counsel presented the very evidence of Burn's liability for investor losses that movant contends should have been presented. Id. at 7; ECF Nos. 344-2, 344-3. Counsel also argued that various other losses attributed to relevant conduct should be excluded, and he challenged the total loss amount. ECF No. 344 at 8-12. In support of lower loss calculations, counsel retained an expert forensic accountant and provided her report. ECF No. 344-6. He also sought a downward variance based on movant's history and characteristics, ECF No. 344 at 20-21, contrary to the allegation here that he presented no mitigation case. In sum, the record reflects able representation at sentencing. Because the record as a whole demonstrates that movant is not entitled to relief, summary denial of the ineffective assistance claim is appropriate.

### B. Ground Two: Trial Court's Failure to Order a New Trial

Movant alleges that the court "abuse[d] its discretion in declining to grant a new trial sua sponte based upon the obvious and significant prejudicial mistakes of defense counsel." ECF No. 417 at 4. Because the ineffective assistance of counsel claim fails for the reasons explained above, the factual predicate for this this claim fails.

To the extent Stratos is attempting to relitigate the denial of the new trial motion that was brought following substitution of counsel and was denied as untimely, see ECF No. 260, that issue has been forfeited by the failure to raise it on appeal. See Egger v. United States, 509 F.2d 745, 748 (9th Cir. 1975).

### C. Ground Three: Unfair Sentence

Movant contends that the sentence imposed by the court violated the U.S. Constitution

1  because it was "procedurally or fundamentally unfair or a product of ineffective counsel."  ECF
2  No. 417 at 4, 15-19.  The United States argues that this claim is barred by the law of the case
3  doctrine.  ECF No. 432 at 19-20.  The undersigned agrees.

4  Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.  Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).  This doctrine precludes re-litigation in the § 2255 context of issues that have been previously decided on direct appeal, either explicitly or by necessary implication.  United States v. Jingles, 702 F.3d 494, 499 (9th Cir. 2012), cert. denied, 568 U.S. 1257 (2013).  A court may have discretion to depart from the law of the case where (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.  United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1977).  Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.  Thomas v. Bible, 983 F.2d 152, 155 (9th Cir.), cert. denied 508 U.S. 951 (1993).

The substantive reasonableness of movant's sentence was raised on appeal, and the Ninth Circuit rejected the claim.  See ECF No. 432-4 at 4-5.  Movant may not relitigate appeal issues in a § 2255 motion.  See United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000).  He has identified no intervening change in the law, new evidence, or changed circumstances that would support departing from the law of the case.  No manifest injustice appears, despite movant's factually unsupported rhetoric.  Accordingly, the law of the case bars this claim.

To the extent that movant is attempting to raise sentencing concerns that were not presented on direct review, his claim is procedurally barred because such issues could have and should have been included in the appeal.  It is well established that a § 2255 movant procedurally defaults his record-based claims by not raising them on direct appeal.  See Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003).  The U.S. Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1981).  This means that

1  "grounds which were apparent on initial appeal cannot be made the basis for a second attack

2  under § 2255." Egger, 509 F.2d at 748.[11]

   D.  Ground Four: Sentencing Guidelines Error

Movant alleges that the court erred in its use of the U.S. Sentencing Guidelines. ECF No. 417 at 4, 14-15. The United States argues that this claim, like Ground Three, is barred by the law of the case doctrine. ECF No. 432 at 19-20. The undersigned agrees. On appeal, movant contended that the sentencing court erred in applying a two-level enhancement for abuse of trust and a four-level enhancement for multiple victims who suffered substantial financial hardship. ECF No. 432-4 at 3-4. Those issues cannot be relitigated. See Hayes, 231 F.3d at 1139. To the extent that movant's Guidelines arguments here are distinct from those raised on appeal, they have been procedurally defaulted for the same reasons discussed in relation to Ground Three.

   E.  Ground Five: Speedy Trial Violation

Movant alleges that his conviction must be vacated because he was prejudiced by the denial of a speedy trial. ECF No. 417 at 4, 19-21. The government argues that this claim is procedurally defaulted by failure to raise it in the district court or on appeal. Once again, the government is correct. Each continuance of this case from the initial appearance through final judgment was accompanied by an exclusion of time under the Speedy Trial Act.[12] None was opposed by the defendant, who never asserted his speedy trial rights but repeatedly sought additional time for preparation. Because no speedy trial issue was raised in the trial court or presented on appeal, the issue has been forfeited. See Ratigan, 351 F.3d at 962.

////

---

[11] Procedural default may be excused only upon a showing of cause and prejudice. Bousley, 523 U.S. at 622. The reply contains no such showing. To the extent that the reply's conclusory references to ineffective assistance of appellate counsel (see ECF No. 442 at 8-9) are intended to excuse default, they are ineffective. To excuse a procedural default, ineffective assistance of appellate counsel must be independently pleaded and proved. Murray v. Carrier, 477 U.S. 478, 488 (1986); Edwards v. Carpenter, 529 U.S. 446, 451 (2000). The § 2255 motion in this case does not present an independent claim of ineffective assistance on appeal. See ECF No. 417.

[12] The government has identified each continuance in its opposition. ECF No. 432 at 22-23. The undersigned has reviewed the docket, and finds that the government has accurately characterized the history of defense stipulations to the exclusion of time.

F.  Ground Six: *Brady* Violations

Movant alleges that he was prejudiced by "multiple Brady violations." ECF No. 417 at 21. The government urges that the claim is procedurally defaulted, but Brady claims by their nature can rarely be asserted in the trial court or on appeal. Because Brady claims involve the alleged suppression of evidence by the government during the pendency of the case in the trial court, they are often not discovered until the post-conviction phase. Because Brady claims generally involve extra-record evidence, they are usually not cognizable on direct review. Brady claims are typically presented in habeas after previously suppressed evidence has been discovered. Although that does not appear to be there case here,[13] the primary defect of movant's claim is not procedural default but failure to state a prima facie claim for relief.

In Brady v. Maryland, 373 U.S. 83 (1963), the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused… violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The duty to disclose such evidence applies even when there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and it encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985). To state a Brady claim, movant must show (1) that the evidence at issue is favorable to him, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued). See Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Movant alleges that the "most egregious Brady violation was the taking of and destroying (access) to defendant's exonerating emails between him and Nicole and between him and those involved in the Facebook case, i.e., Tim Burns, Joe Schnair, Ken (K.C.) Dennis, and Facebook

---

[13] Of course, where the facts supporting a Brady claim are discovered within the time for bringing a new trial motion, it is possible to litigate the issue in the trial court and then appeal from a denial. That did not happen here. The government's procedural default argument would have persuasive force were it possible to conclude with confidence that the factual basis of the Brady claim had been known to movant within the time for a new trial motion. The claim is so poorly pleaded that it is impossible to know.

18

1  executives to show Soumaya, through Stratos and Dennis's efforts, had earned the finder's fee.
2  He would have been able to prove his relationship with the Carlos Sims family though the
3  patriarch's son Carlos Domit." ECF No. 417 at 21.  This highly generalized description fails to
4  demonstrate the existence of any particular evidence (such as the content of any exonerating
5  email message), let alone its specific exculpatory value.[14]  Neither are there any factual
6  allegations sufficient to demonstrate the suppression of such evidence within the meaning of
7  Brady and progeny.  The motion contains no facts specifying who "took" and "destroyed" what,
8  let alone when and how this happened.  And movant's entirely conclusory assertions of prejudice
9  are inadequate to state a prima facie case of materiality.

10  Movant also alleges that the prosecution submitted "unauthenticated and edited audio
11  recordings," and provided "undisclosed immunity to Ken C. Dennis." ECF No. 417 at 23.  No
12  details are provided.  There are no facts showing the existence of an immunity deal, its
13  suppression, or its materiality.  Neither are there any specific factual allegations as to any
14  exculpatory evidence edited out of any audio recordings.  Again, movant's conclusory assertions
15  fail to provide a factual basis for relief.

16  The remainder of this claim amounts to a laundry list of complaints about things entirely
17  outside the scope of Brady: the prosecutor's filing of a motion, and general mode of questioning
18  witnesses; the FBI's alleged intimidation of unspecified witnesses; and numerous problems that
19  movant encountered in pretrial detention including cell searches, having his reading glasses and
20  file folders taken away from him, and other alleged forms of custodial harassment. ECF No. 417
21  at 22-23.  None of these provides any basis for relief from a conviction or sentence.  See,
22  generally, Preiser v. Rodriguez, 411 U.S. 475, 490 (1973) (distinguishing between claims going
23  to validity of conviction and sentence, which must be raised in habeas, and those regarding events
24  during confinement, which must be presented in civil rights lawsuit); see also Nettles v. Grounds,

---

[14] Evidence that movant was acquainted with members of the Slim family would not have cast doubt on the government's theory of the case or created a likelihood of a different verdict.  The evidence established that movant had falsely represented that he was negotiating the share of pre-IPO Facebook shares to Carlos Slim.  Whether movant was a stranger to or an intimate of the Slim family is irrelevant to that fact.

830 F.3d 922, 930 (9th Cir. 2016).

Because Stratos has not presented specific facts which, if true, would entitle him to relief, his putative Brady claim should be summarily denied.  See Howard, 381 F.3d at 877.

G.  Additional Allegations of Error

At the end of his § 2255 motion, movant presents a conclusory litany of additional "judicial errors."  ECF No. 417 at 23-27.  These include pretrial detention and matters related to pretrial conditions of confinement, id. at 23-24, which do not present cognizable grounds to vacate a conviction or sentence.  See Preiser, supra.  Any cognizable trial errors that were not raised on appeal are procedurally defaulted.  See Ratigan, 351 F.3d at 962.  Accordingly, no basis for relief is stated.

CONCLUSION

For all the reasons explained above, the petition, files, and record of this case conclusively show that movant is not entitled to relief.  See Howard, 381 F.3d at 877.  Accordingly, IT IS HEREBY RECOMMENDED that the motion to vacate under 28 U.S.C. § 2255, ECF No. 417, be summarily DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 16, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE